***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with ACE, USA as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $480.00, which yields a compensation rate of $320.00 per week.
5. Fifteen pages of medical records from Carolina Neurosurgery 
Spine Associates, six pages from Carolinas Healthcare System, twelve pages from Union Regional Medical Center, eight pages from Charlotte Pain Associates, and nine pages from Charlotte Bone Joint were submitted and received into the evidentiary record.
6. The issue for determination is whether plaintiff sustained a compensable injury on September 21 or 22, 1999, and if so, to what benefits may he be entitled?
 ***********
Based upon all the evidence of record, the Full Commission finds as fact the following
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-nine years old with a twelfth grade education. Plaintiff's primary employment experience has been in industrial training, shipping, receiving and computer training.
2. Prior to working for defendant-employer, plaintiff worked for Regency Electric where his duties included lifting lights. While employed with Regency Electric, plaintiff sustained a back injury, which resulted in surgery at the L5-S1 level in July of 1997 by Dr. Thomas Friedrich. As a result of this surgery, plaintiff was rated with a thirteen percent permanent partial impairment to his back. Plaintiff disclosed his prior back condition to Staffmark, the temporary employment service, for which he worked when he was initially placed at Varlen. This pre-existing injury did not prevent plaintiff from working and he was later hired directly by defendant-employer.
3. Plaintiff began working for defendant-employer in early 1999 through the temporary agency. Defendant-employer hired plaintiff as a laborer but eventually plaintiff was made a CNC operator, where his duties required him to take a clutch housing part from a stack, put it on the machine to be processed, remove the part from the machine, and pass it to another person.
4. On April 27, 1999, plaintiff alleges that he sustained a second back injury when he fell down a flight of steps. However, according to plaintiff, he did not file a workers' compensation claim because Staffmark denied his claim. While plaintiff did go to the emergency room, he did not receive any further treatment or rating and did not pursue a claim.
5. In August 1999, plaintiff settled his workers' compensation claim against Regency Electric for $27,000.00 for multiple injuries including the back.
6. On August 26, 1999, plaintiff was seen at the emergency room for back complaints.
7. Sometime in September 1999, plaintiff purchased over $7,000.00 in furniture and $2,500.00 in stereo and television equipment. Shortly, thereafter, on September 21, 1999, before reporting to work that night, along with a co-employee, Danny Probst, plaintiff moved from his girlfriend's house into a new apartment. While moving, plaintiff performed lifting, squatting and bending. Plaintiff was in the process of lifting a chair or couch and felt a "pop" in his back. When Mr. Probst arrived at work, he related that plaintiff might not come to work due to hurting his back moving furniture. However, plaintiff arrived at work and worked for approximately two or three hours and then stated that he needed to leave to go to the doctor to get a shot in his back. No mention was made of a work related incident to his supervisor, Randy Collins, who understood that plaintiff's injury came from moving furniture. As there was no phone available in the work area, plaintiff went to the guardhouse and attempted to call his girlfriend for help. Mr. Collins observed plaintiff dragging his leg as he walked to the guardhouse. Plaintiff was unable to reach his girlfriend so Mr. Collins allowed Mr. Probst to take plaintiff to the emergency room but told plaintiff that he would have to get a ride home since the injury did not occur at work. Plaintiff said he understood.
8. Plaintiff's testimony is that on the night of approximately September 21, 1999 he and other co-workers were in the process of cleaning up and moving machines from one part of the building to another new work area when Mr. Collins requested that plaintiff move some things. Plaintiff contends that he responded that his prior back injury prevented him from lifting a lot so Mr. Collins found a co-worker to help. Plaintiff testified that he moved a solid steel table weighing almost three hundred pounds and that Mr. Collins asked him if he was all right. Plaintiff believes that Mr. Collins asked this question because he knew of plaintiff's prior back condition. Plaintiff described no specific injury or onset of pain during his testimony and stated that he realized two or three days later that he had a problem after this lifting.
9. When plaintiff was seen in the emergency room that night, September 22, 1999 at 12:54 a.m., he reported that he had injured his back on September 17, 1999 while lifting a "heavy load" but no mention was made of a work-related injury. Plaintiff contends that he told the doctor about moving his residence on September 14 and 17, 1999 but that he did not hurt himself moving. However, plaintiff further stated that he did not tell the doctors that he injured himself on September 17, 1999. Plaintiff was written out of work for three days and referred him to Dr. Friedrich.
10. On September 30, 1999, Dr. Friedrich saw plaintiff for chronic left-sided sciatica. Plaintiff gave a history of prior surgery with a poor result and continuing problems. Significantly, plaintiff made no mention of a work related injury to Dr. Friedrich. An MRI was ordered, which revealed a recurrent herniated disk at L5-S1. During his return visit to Dr. Friedrich on October 7, 1999 and upon learning the MRI results, plaintiff reported the possibility that he injured his back lifting a steel beam at work two to three weeks earlier. Plaintiff also reported a fall that occurred in April 1999.
11. On October 26, 1999, Dr. Friedrich performed a left L5-S1 discectomy. Plaintiff initially progressed well post-operatively. However, he continued to complain of numbness. By January of 2000, plaintiff complained of incapacitating back and left leg pain. Dr. Friedrich ordered an MRI for a suspected re-herniation.
12. On or about November 23, 1999, plaintiff filed a Form 18, Report of Injury, which reflected plaintiff's claim that he was lifting metal and a partner dropped the end. Thereafter, on or about December 16, 1999, defendant filed a Form 61, denying plaintiff's claim.
13. On January 13, 1999, Dr. Michael A. Cowan of Carolina Neurosurgery Spine Associates examined plaintiff upon referral from Dr. Friedrich for left leg and back pain, which was incapacitating. A recent MRI revealed a left L5-S1 disc herniation, which was noted as fairly significant, with effacement of the left S1 nerve root. Dr. Cowan recommended an exploratory surgery and discectomy.
14. On January 18, 2000, Dr. Cowan performed a hemilaminectomy, foraminotomy, and re-do discectomy at L5-S1 on the left, which gave plaintiff relief from back and leg pain. On February 10, 2000, Dr. Cowan found plaintiff's neurologic condition to be stable but kept him out of work for an additional six weeks. However, by March 29, 2000, plaintiff was seeking pain medication from Union Regional Medical Center emergency room, in addition to the Tylox, Oxycontin and Soma, which Dr. Cowan had prescribed for pain. Dr. Cowan noted that plaintiff was not to receive additional narcotic medication. On April 20, 2000, Dr. Cowan recommended that plaintiff undergo pain management, including a series of epidural steroid injections and kept him out of work for another six weeks.
15. None of Dr. Cowan's notes contain a description of plaintiff's alleged work related injury.
16. Upon referral from Dr. Cowan, plaintiff was seen on May 1, 2000 by Dr. Henry Okonneh and claimed that his complaints began in 1998 and was attributed to lifting at work. Importantly, no report was made concerning a work-related incident on September 21 or 22, 1999. Plaintiff related to Dr. Okonneh that he was not involved in any litigation despite the fact that he was pursuing the instant claim. On May 17, 2000, Dr. Okonneh diagnosed plaintiff with failed back syndrome and resulting pain and gave plaintiff a steroid injection.
17. By August 21, 2000, plaintiff had begun to complain of bowel problems, in addition to the back and leg pain. An MRI was ordered which revealed a disc bulge at L5-S1, complete collapse of the disc space, and modic endplate changes. Dr. Cowan recommended a fusion with instrumentation and advised plaintiff to cease smoking and taking aspirin, ibuprofen and Prednisone.
18. On December 14, 2000, Dr. Cowan performed the L5-S1 posterior lumbar interbody fusion with pedicle screw fixation. Plaintiff was discharged on December 20, 2000, and was scheduled for physical therapy beginning in January 2001.
19. In May of 2001, plaintiff obtained part-time work as a substance abuse counselor at Union Regional Medical Center, where he earns $7.13 per hour. Plaintiff works eight hours every two weeks.
20. The greater weight of the evidence fails to establish that plaintiff sustained a work-related injury by accident on September 21, 1999 or on September 22, 1999 as a result of a specific traumatic incident.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSION OF LAW
The greater weight of the evidence fails to establish that plaintiff sustained a work-related injury by accident on September 21, 1999 or on September 22, 1999 as a result of a specific traumatic incident. Therefore, plaintiff is entitled to no benefits under the workers' compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiff's claim is hereby and the same shall be Denied.
2. The parties shall bear their own costs.
This the ___ day of November 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER